LEMMON, Judge,
dissents and assigns reasons.
The majority opinion is incorrect because (1) there is no basis for disregarding defendant’s building manager’s express testimony that the purchaser contacted him in March, 1968 and that he did not refer the prospect to plaintiff, and (2) no other evidence contradicts this testimony, and indeed other evidence supports it.
*1197 The listing agreement involved the lease of the ground floor of the Masonic Temple Building owned by defendant. In September, 1967 the tenant then occupying the ground floor notified defendant of its intention to vacate the premises on March 7, 1968. Defendant requested plaintiff, who had handled the previous lease, to attempt to secure another tenant and agreed to pay a commission, but did not then sign a listing.
Plaintiff’s salesman contacted International City Bank (ICB), who occupied a building which adjoined part of defendant’s building. When the bank president expressed an interest, the salesman on October 26, 1967 delivered a copy of the architect’s sketch of the existing floor plan. The salesman followed up in November and December, but was told no definite decision had been reached.
On January 1,1968 defendant’s Chairman of the House Committee executed the listing agreement at issue, granting plaintiff an exclusive listing for three months. Plaintiff prepared and distributed brochures, advertised in newspapers, and showed the building to several other prospective tenants. When the listing expired on April 1, 1968, plaintiff requested an extension, which was denied.
Defendant signed a lease with ICB on May 13, 1968. Plaintiff, upon learning of the lease, claimed a commission, and this litigation ensued.
Defendant admits that Lonnie Blanchard, an ICB representative, contacted its building manager and that the manager did not refer the client to plaintiff, but contends the initial contact was after the listing agreement had expired. An analysis of the evidence, however, does not bear out this contention.
Sheldon Hubbard became defendant’s building manager in the first week of March, 1968, after the former manager had died on February 2. He testified that Blanchard contacted him “shortly after that” (he answered affirmatively an inquiry as to whether this was in March); that he didn’t know plaintiff had a listing (although there was a 4 x 6-foot sign in the front window); that he told Blanchard he was new on the job and didn’t have any information about the amount of space, the rental price, or the owner’s willingness to make improvements; that Blanchard contacted him again several weeks later (stated by Hubbard to be in March) and still later saw him on the street, but he didn’t yet have any information; and that “considerably later” after the time he became building manager (estimated to be three weeks to one month later) he and the committee chairman became involved in negotiations with Blanchard and with John Sitton, an ICB official who had not been involved in prior discussions.
While Hubbard’s overall testimony was somewhat confused and perhaps influenced by leading questions, it is clear that he had been on the job for several weeks before Sitton became involved in the negotiations. That fact, supported by a memorandum from Sitton to ICB’s president, dated April 8, 1968, stating he and Blanchard had met with Hubbard that morning to outline the basic points of the lease agreement, strongly suggests Hubbard was correct in stating that one or more of the contacts occurred in March.
On the other hand, there was no evidence from which one could reasonably reach a contrary conclusion. The bank president remembered very little, except that his early interest was lessened by access problems which were later resolved. Neither Blanchard nor Sitton testified. The only other witness on the subject, defendant’s committee chairman, testified that he told Hubbard, when informed of Blanchard’s inquiry, to check to see if defendant’s listing had expired before negotiating further, that Hubbard could not find the listing in the office records which were disorganized because of his predecessor’s lengthy illness, and Hubbard finally called plaintiff and ascertained the listing had expired. Again, this testimony, based largely on information received from Hubbard, indicates a substantial period between ICB’s first contact with Hubbard and the commencement of serious *1198 negotiations, which took place at least as early as April 8.
Furthermore, Hubbard’s lack of information, even as late as Blanchard’s third contact, also suggests he had not yet determined whether plaintiff’s listing had expired (which was done before specific negotiations began).
Since there was no evidence in the record to support a finding that ICB’s first contact with defendant occurred after the listing agreement expired, there was manifest error in the implicit finding by the trial court that no contact occurred during the existence of the listing agreement.
The majority’s alternative position. — that the failure to refer this particular prospect was a harmless breach of contract because plaintiff had already contacted ICB about leasing the property — ignores the element of timing in the negotiation of real estate contracts. Plaintiff knew the fact that ICB was interested in leasing the property in late 1967, but did not know the fact that ICB became interested anew in March, 1968. It was defendant’s apparently unintentional non-disclosure of the latter fact which breached the contract and deprived plaintiff of the opportunity of negotiating with a currently interested prospect during the term of the listing agreement. Because of this breach under these circumstances defendant should be liable for the amount of the commission. See Doll v. Thornhill, 6 So.2d 793 (La.App.Orl.1942).